

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-13-00126-CR

_____

CLAYTON DEAN REEDER, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 4th District Court
Rusk County, Texas
Trial Court No. CR 13-062

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Chief Justice Morriss

O P I N I O N

When, in early September 2012, Clayton Dean Reeder swerved his vehicle to miss a deer and skidded sideways off a rural Rusk County highway and into a tree, Reeder had already been, twice before, convicted of driving while intoxicated (DWI), a third degree felony.[1]  After Reeder refused to give his consent to have his blood drawn and tested for alcohol, law enforcement officials took a blood specimen anyway and tested it under the authority of Section 724.012(b)(3)(B) of the Texas Transportation Code.  *See* TEX. TRANSP. CODE ANN. § 724.012(b)(3)(B) (West 2011).  After Reeder's resulting enhanced DWI conviction, he urges, in a single appellate issue, that the warrantless blood seizure was constitutionally improper.  We agree and reverse the trial court's judgment.

While investigating this accident, Texas Department of Public Safety Officer Zach Mills spoke with Reeder and noticed signs of intoxication.  Mills followed the ambulance transporting Reeder to a local hospital where he continued to speak with Reeder concerning the accident. During the interview, Mills noticed that Reeder's speech was slurred, the odor of alcohol was on his breath, and his eyes were glassy and bloodshot.  Reeder indicated that he had consumed only "two beers," but then stated that he could not recall exactly how much he drank and that he consumed a mixed alcoholic beverage before driving.[2]

---

[1]*See* TEX. PENAL CODE ANN. §§ 49.04 (driving while intoxicated), 49.09(b)(2) (West Supp. 2013) (enhanced offenses and penalties).

[2]While speaking with Mills, Reeder vomited a liquid substance that reeked of the odor of an alcoholic beverage.

2

Based on this interview, Mills determined that Reeder did not have the normal use of his mental or physical faculties due to the introduction of alcohol into his system.[3] Reeder was informed of the DWI statutory warning contained in the DIC-24 form,[4] but refused to provide a blood specimen. Because Reeder had two previous DWI convictions, a mandatory blood specimen was obtained in accordance with Section 724.012(b)(3)(B) of the Texas Transportation Code. *See* TEX. TRANSP. CODE ANN. § 724.012(b)(3)(B). On his release from the hospital, Reeder was taken to the Rusk County Jail and charged with the third degree felony offense of DWI.

Reeder filed a motion to suppress any evidence pertaining to the blood specimen, claiming, among other things, that the specimen was unconstitutionally seized without a warrant. The trial court denied Reeder's motion to suppress evidence. Reeder was thereafter found guilty by the court after entering his plea of guilt and was sentenced to six years' confinement.

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). A trial court's determination of historical facts is given almost total deference, while the trial court's application of the law to those facts is reviewed de novo. *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000). When the trial court does not issue findings of fact and none are requested, as in this case, we imply findings that support the trial court's ruling if the evidence,

---

[3]Because Reeder was strapped to a medical back board, Mills was unable to administer standardized field sobriety tests.

[4]Before an officer may request a blood sample, the person from whom the sample is requested must be informed that: (1) evidence of the refusal will be admissible against the person in court, and (2) the person's driver's license will be suspended for not less than 180 days. TEX. TRANSP. CODE ANN. § 724.015(1), (2) (West Supp. 2013).

viewed in the light most favorable to the ruling, supports those findings. *Turrubiate*, 399 S.W.3d at 150. We view the evidence in the light most favorable to the trial court's ruling and afford the prevailing party "the 'strongest legitimate view of the evidence'" and all reasonable inferences that may be drawn from the evidence. *State v. Duron*, 396 S.W.3d 563, 571 (Tex. Crim. App. 2013) (quoting *State v. Weaver*, 349 S.W.3d 521, 525 (Tex. Crim. App. 2011)). We will uphold the trial court's ruling if it is reasonably "supported by the record and is correct on any theory of law applicable to the case." *Turrubiate*, 399 S.W.3d at 150.

Reeder relies on *Missouri v. McNeely*, 133 S.Ct. 1552 (2013), for the proposition that a warrant for the extraction of his blood was required in this case. In *McNeely*, the United States Supreme Court addressed the issue of whether the Fourth Amendment requires police to get a warrant before taking a blood sample from a nonconsenting driver suspected of being under the influence of alcohol. *Id*. at 1556. The Court concluded that the natural dissipation of alcohol in the bloodstream does not always present a per se exigency that justifies an exception to the warrant requirement for nonconsensual blood testing in DWI cases. *Id*. Instead, the Court recognized that, sometimes, exigent circumstances, based in part on the rapid dissipation of alcohol in the body, may allow law enforcement to obtain a blood sample without a warrant. Courts must determine on a case-by-case basis whether exigent circumstances exist, considering the totality of the circumstances. *Id*.

Reeder contends that, effectively, the statute unconstitutionally requires blood testing "in all felony cases."[5] He claims that, in this case, the State failed to demonstrate the existence of exigent circumstances which would forgive the lack of a warrant. He therefore claims the blood specimen was taken in violation of his Fourth amendment rights and should be suppressed.

The withdrawal of a blood specimen is a search and seizure under the Fourth Amendment. *Schmerber v. California*, 384 U.S. 757, 767 (1966). The Fourth Amendment to the United States Constitution protects the right to be free from unreasonable searches. U.S. CONST. amend. IV. A warrantless search or seizure is per se unreasonable, unless it falls under a recognized exception to the warrant requirement. *Katz v. United States*, 389 U.S. 347, 357 (1967); *Walter v. State*, 28 S.W.3d 538, 541 (Tex. Crim. App. 2000).

Here, the State does not claim an exigency exception to the warrant requirement. Instead, the State relies on Section 724.012(b)(3)(B) of the Texas Transportation Code as its authority for obtaining the blood specimen. As applicable to this case, that section requires a peace officer to take a specimen of blood or breath of a driver arrested for DWI who refuses to consent to the specimen if, "at the time of the arrest, the officer possesses or receives reliable information from a credible source that the person" at least twice before has been convicted or put on community supervision for DWI. TEX. TRANSP. CODE ANN. § 724.012(b)(3)(B).

---

[5]As recognized by our sister court, "The statute does not purport to authorize a warrantless blood draw based solely on the natural metabolization of alcohol in the bloodstream; instead, it sets forth multiple, specific circumstances in which a blood draw is required." *Douds v. State*, No. 14-12-00642-CR, 2013 WL 5629818, at *5 (Tex. App.— Houston [14th Dist.] Oct. 15, 2013, no pet. h.). This opinion has not been released for publication in the permanent law reports. It is therefore subject to revision or withdrawal until released.

The existence of exigent circumstances is one exception to the requirement of a search warrant. It is, however, "equally well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). Section 724.012 of the Texas Transportation Code is one section under which Texas implies the consent of the person being tested. *See* TEX. TRANSP. CODE ANN. §§ 724.011,[6] 724.012, 724.013 (West 2011).[7]

Pursuant to Section 724.011 of the Texas Transportation Code, a person who has been arrested for DWI in a public place is considered to have consented to submit to the taking of a breath or blood specimen for analysis to determine the alcohol concentration in the person's body. *See* TEX. TRANSP. CODE ANN. § 724.011. Such a person retains the right, subject to automatic suspension of his or her license, to refuse to provide a specimen. TEX. TRANSP. CODE ANN. § 724.035 (West 2011). If, however, the person refuses to voluntarily provide a specimen and the arresting officer, at the time of the arrest, possesses or receives reliable information from a credible source that the person on two or more occasions has previously been convicted of

---

[6]This section of the statute provides that,

> (a)    If a person is arrested for an offense arising out of acts alleged to have been committed while the person was operating a motor vehicle in a public place, or a watercraft, while intoxicated, or an offense under Section 106.041, Alcoholic Beverage Code, the person is deemed to have consented, subject to this chapter, to submit to the taking of one or more specimens of the person's breath or blood for analysis to determine the alcohol concentration or the presence in the person's body of a controlled substance, drug, dangerous drug, or other substance.

> (b)    A person arrested for an offense described by Subsection (a) may consent to submit to the taking of any other type of specimen to determine the person's alcohol concentration.

TEX. TRANSP. CODE ANN. § 724.011.

[7]This section prohibits the taking of a specimen "[e]xcept as provided by Section 724.012(b)" in the circumstance a "person refuses to submit to the taking of a specimen designated by a peace officer." TEX. TRANSP. CODE ANN. § 724.013.

DWI, the officer "shall require the taking of a specimen of the person's breath or blood." TEX. TRANSP. CODE ANN. § 724.012(b)(3)(B). Here, there is no dispute that Reeder had two prior DWI convictions. The statute mandates a blood draw for this particular offense and deems that Reeder impliedly consented to the blood draw.

"The implied consent law does just that—it implies a suspect's consent to a search in certain instances. This is important when there is no search warrant, since it is another method of conducting a constitutionally valid search." *Beeman v. State*, 86 S.W.3d 613, 615 (Tex. Crim. App. 2002). Further,

> The implied consent law expands on the State's search capabilities by providing a framework for drawing DWI suspects' blood in the absence of a search warrant. It gives officers an additional weapon in their investigative arsenal, enabling them to draw blood in certain limited circumstances even without a search warrant.

*Id*. at 616.

While this reasoning has been used by intermediate appellate courts to uphold the validity of a warrantless blood draw, the United States Supreme Court's *McNeely* decision casts grave doubt on such reasoning. In a recent case, our sister court of appeals in San Antonio held, under existing precedent, that a warrantless blood draw conducted according to the Texas Transportation Code did not violate the defendant's Fourth Amendment rights. *See Aviles v. State*, 385 S.W.3d 110, 112 (Tex. App.—San Antonio 2012, pet. ref'd), *vacated*, 134 S.Ct. 902 (2014). The United States Supreme Court vacated the *Aviles* judgment and remanded the case to

7

the Court of Appeals for further consideration in light of *McNeely*.[8] *Aviles v. Texas*, 134 S.Ct. 902 (2014).

Aviles was arrested for DWI with two prior DWI convictions. After he was given the appropriate statutory warnings, Aviles refused to provide a breath or blood sample. As in this case, the arresting officer, in reliance on Section 724.012(b)(3)(B) of the Texas Transportation Code, obtained a mandatory nonconsensual blood draw. *Aviles*, 385 S.W.3d at 112–13. On appeal, Aviles challenged the denial of his motion to suppress, arguing that the trial court erred by admitting his blood specimen into evidence because the specimen was obtained without consent and without a warrant. *Id*. at 112. In rejecting this contention, the court relied on the implied-consent provision of the Texas Transportation Code. It reasoned that the mandate of Section 724.012(b)(3)(B) was one of the "circumstances" referenced in *Beeman* in which blood may be drawn without a warrant. *Id*. at 116. The fact that the officer could have gotten a warrant for the blood draw was "immaterial given the mandate of [S]ection 724.012(b)(3)(B)." *Id*.[9]

In a post-*McNeely* decision, the Corpus Christi Court of Appeals recently held that "the constitutionality of the repeat offender provision of the mandatory blood draw law must be based on the previously recognized exceptions to the Fourth Amendment's warrant requirement."

---

[8]As of the date of this opinion, the San Antonio Court of Appeals has not issued a new opinion in *Aviles*.

[9]*Aviles* pre-dated *McNeely*. In a post-*McNeely* decision, our sister court addressed a similar issue in *Smith v. State*, No. 13-11-00694-CR, 2013 WL 5970400, at *1 (Tex. App.—Corpus Christi Oct. 31, 2013, pet. dism'd.). Like *Aviles*, *Smith* recognized that implied consent to a search is, as stated in *Beeman*, another method of conducting a constitutionally valid search. *Id*. at *3. The Corpus Christi Court of Appeals withdrew this opinion on November 26, 2013.

8

*State v. Villarreal*, No. 13-13-00253-CR, 2014 WL 1257150, at *11 (Tex. App.—Corpus Christi Jan. 23, 2014, pet. filed).

In *Villarreal*, the court was confronted with a factual scenario similar to that presented here. Villarreal, who was arrested for DWI with three prior DWI convictions, did not consent to a blood draw, and a blood warrant was not obtained. The State conceded that there were no exigent circumstances. *Id.* at *1. The test showed Villarreal was over the legal limit, and he was charged with third-degree felony DWI. *Id.* The State appealed the grant of Villarreal's suppression motion, claiming that, because it established the blood draw was performed pursuant to Section 724.012(b)(3)(B) of the Texas Transportation Code, there was no Fourth Amendment violation. *Id.* at **2, 9. The court observed that there is a distinction between a consensual blood draw and a nonconsensual, mandatory blood draw, because "the mandatory blood draw law is premised on refusal to consent." *Id.* at *9. Further, because

> neither the United States Supreme Court nor the Texas Court of Criminal Appeals has recognized the repeat offender provision of the mandatory blood draw law . . . as a new exception to the Fourth Amendment's warrant requirement separate and apart from the consent exception and the exception for exigent circumstances[,] . . . the constitutionality of the repeat offender provision of the mandatory blood draw law must be based on the previously recognized exceptions to the fourth Amendment's warrant requirement.

*Id.* at *11. Very recently, a different sister court aptly stated the resulting situation:

> By vacating and remanding *Aviles*, it would seem that the United States Supreme Court has rejected any position that would treat Section 724.012(b)(3)(B) as an exception to the Fourth Amendment, separate and apart from the traditional, well-established exceptions. Similarly, it would seem that the position advanced in *Aviles* that the Texas Transportation Code's implied-consent provision applies to justify the warrantless mandatory blood draw of Section 724.012(b)(3)(B) is also constitutionally infirm.

*Sutherland v. State*, No. 07-12-00289-CR, 2014 WL 1370118, at *8 (Tex. App.—Amarillo Apr. 7, 2014, no pet. h.) (concluding no exigent circumstances support warrantless seizure of appellant's blood specimen).

In light of the United States Supreme Court's remand of *Aviles* and in light of the reasoning in *Villarreal*[10] and *Sutherland*, we conclude that, in the absence of a warrant or exigent circumstances, taking Reeder's blood pursuant to Section 724.012(b)(3)(B) of the Texas Transportation Code violated his Fourth Amendment rights.[11]  *See Villarreal*, 2014 WL 1257150, at *11; *see Schmerber*, 384 U.S. at 767 ("Search warrants are ordinarily required for searches of dwellings, and absent an emergency, no less could be required where intrusions into the human body are concerned."). It was error, therefore, to deny Reeder's motion to suppress.

We reverse the judgment of the trial court and remand for a new trial consistent with this opinion.

Josh R. Morriss, III
Chief Justice

Date Submitted:     February 4, 2014
Date Decided:     April 29, 2014

Publish

---

[10]Section 724.012(b)(3)(B) does not purport to dispense with the warrant requirement. TEX. TRANSP. CODE ANN. § 724.012(b)(3)(B); *Villarreal*, 2014 WL 1257150, at *11 n.12; *see* TEX. GOV'T CODE ANN. § 311.021(1) (West 2013) ("In enacting a statute, it is presumed that . . . compliance with the constitutions of this state and the United States is intended.").

[11]*Cf. Perez v. State*, No. 01-12-01001-CR, 2014 WL 943126, at *7 (Tex. App.—Houston [1st Dist.] Mar. 11, 2014, no pet. h.) (taking blood sample without warrant in compliance with Section 724.012(b) of Transportation Code did not violate defendant's Fourth Amendment rights by requiring him to submit to nonconsensual warrantless blood test).