# IN THE COURT
## OF CRIMINAL APPEALS OF TEXAS

| | | |
|---|---|---|
| **LAURA DENISE MOORE,** | § | |
| **APPELLANT** | § | |
| | § | |
| | § | |
| **V.** | § | **PD-1228-15** |
| | § | |
| **THE STATE OF TEXAS ,** | § | |
| **APPELLEE** | § | |

§ § §

## STATE'S PETITION FOR DISCRETIONARY REVIEW

§ § §

SHAREN WILSON
Criminal District Attorney
Tarrant County, Texas

DEBRA WINDSOR, Assistant
Criminal District Attorney
Chief, Post-Conviction

TANYA S. DOHONEY
Assistant Criminal District Attorney
Tim Curry Criminal Justice Center
401 W. Belknap
Fort Worth, Texas  76196-0201
(817) 884-1687   FAX (817) 884-1672
State Bar No. 02760900
ccaappellatealerts@tarrantcountytx.gov

LISA C. MCMINN,
State Prosecuting Attorney

RECEIVED IN
COURT OF CRIMINAL APPEALS

October 21, 2015

ABEL ACOSTA, CLERK

**ORAL ARGUMENT IS REQUESTED**

## IDENTITY OF THE PARTIES AND COUNSEL

The State of Texas, represented by the Hon. Sharen Wilson, Tarrant County Criminal District Attorney, prosecutes this appeal. Additionally, representing the State on appeal is the Hon. Tanya S. Dohoney, Assistant Criminal District Attorney and Hon. Debra Windsor, Assistant Criminal District Attorney and Post-Conviction Chief. At trial, the Hon. Caroline Kim, Assistant Criminal District Attorney, represented the prosecution. The State's attorneys' address is Office of the Criminal District Attorney of Tarrant County, Tim Curry Criminal Justice Center, 401 W. Belknap, Fort Worth, Texas 76196-0201.

Appellant, Defendant below, is Laura Denise Moore. Hon. Mimi Coffey and Hon. Joan Cochrane, 4700 Airport Freeway, Fort Worth, Texas, 76102, and represented Appellee at trial. Hon. Richard A. Henderson, 100 Throckmorton Street, Suite 540, Fort Worth, Texas 76102, represents Appellant on appeal.

The Hon. Scott Wisch, judge of the 372nd Judicial District Court of Tarrant County, Texas, presided over Appellant's case. The Second Court of Appeals transferred this cause to the docket of the Court of Appeals for the Eleventh District of Texas. On August 21, 2015, an unpublished

opinion reversing Appellant's conviction issued.  *Moore v. State*, No. 11-13-00347-CR, (Tex. App.—Eastland Aug. 21, 2015).  The panel deciding the case consisted of Chief Justice Wright, Justice Willson, and Justice Bailey.

# SUBJECT INDEX

IDENTITY OF THE PARTIES AND COUNSEL.............................................i

SUBJECT INDEX .................................................................... iv

INDEX OF AUTHORITIES........................................................... vi

STATEMENT REGARDING ORAL ARGUMENT.........................................9

STATEMENT OF THE CASE ....................................................10

STATEMENT OF THE PROCEDURAL HISTORY OF THE CASE ...........10

STATEMENT OF FACTS .....................................................10

QUESTIONS PRESENTED FOR REVIEW.................................................12

FIRST QUESTION FOR REVIEW ...........................................................12

Does a warrantless, nonconsensual blood draw conducted pursuant to TEX. TRANSP. CODE § 724.012(b) violate the Fourth Amendment?

SECOND QUESTION FOR REVIEW ......................................................12

Are Fourth Amendment warrant-preference exceptions the sole measure of Fourth Amendment reasonableness in warrantless scenarios?

THIRD QUESTION FOR REVIEW.........................................................12

Do exclusionary rule principles mandate suppression of blood evidence seized via a warrantless, nonconsensual, valid-at-the-time mandatory blood draw?

ARGUMENT AND AUTHORITIES.........................................................13

CONCLUSION AND PRAYER ................................................................. 26

CERTIFICATE OF COMPLIANCE ........................................................ 27

CERTIFICATE OF SERVICE ................................................................ 27

# INDEX OF AUTHORITIES

## CASES

*Breithaupt v. Abram,*
    352 U.S. 432 (1957) ...............................................................22

*Cole v. State,*
    454 S.W.3d 89
    (Tex. App.—Texarkana 2014, pet. granted)......................................15

*Davis v. United States,*
    ___ U.S. ___, 131 S. Ct. 2419 (2011).......................................23–24

*Garcia v. State,*
    829 S.W.2d 796 (Tex. Crim. App. 1992) ...........................................25

*Holidy v. State,*
    No. 06-13-00261-CR, 2014 WL 1722171
    (Tex. App.—Texarkana Apr. 30, 2014, pet. granted .......................14

*Hulit v. State,*
    982 S.W.2d 431 (Tex. Crim. App. 1998) ...................................21–22

*Illinois v. Krull,*
    480 U.S. 342 (1987) ...............................................................23

*Maryland v. King,*
    569 U.S. ___, 133 S. Ct. 1958 (2013)..............................................21

*McGee v. State,*
    105 S.W.3d 609 (Tex. Crim. App. 2003) ...........................................22

*McGruder v. State,*
No. 10-13-00109-CR, ___ S.W.3d ___, 2014 WL 3973089
(Tex. App.—Waco 2014, pet. granted) .............................................14

*Michigan Dept. of State Police v. Sitz,*
496 U.S. 444 (1990) ........................................................................21

*Miles v. State,*
241 S.W.3d 28 (Tex. Crim. App. 2007) ............................................16

*Moore v. State,*
No. 11-13-00347-CR, 2015 WL 5192175
(Tex. App.—Fort Worth Aug. 21, 2015)............................................11

*Reeder v. State,*
428 S.W.3d  (Tex. App.—Texarkana 2014, pet. granted) ................14

*Segundo v. State,*
270 S.W.3d 79 (Tex. Crim. App. 2008),
*cert. denied*, 558 U.S. 828 (2009) .............................................21–22

*Skinner v. Railway Labor Executives' Ass'n,*
489 U.S. 602 (1989) ..................................................................18–21

*Smith v. State,*
No. 13-11-00694-CR, ___ S.W.3d ___, 2014 WL 5901759
(Tex. App.—Corpus Christi 2014, pet. granted) ..............................14

*State v. Daugherty,*
931 S.W.2d 268 (Tex. Crim. App. 1996) ..........................................25

*State v. Villarreal,*
PD-0306-14, ___ S.W.3d ___, 2014 WL 6734178
(Tex. Crim. App. 2014) ...........................................................*passim*

*Tharp v. State,*
935 S.W.2d 157 (Tex. Crim. App. 1996) ..........................................19

*Vernonia School Dist. 47J v. Acton,*
515 U.S. 646 (1995) ........................................................................20

*Weems v. State,*
434 S.W.3d 655
(Tex. App.—San Antonio  2014, pet. granted) ...........................14–15

## STATUTES

TEX. CODE CRIM. PROC. art. 14.04..................................................18

TEX. CODE CRIM. PROC. art. 18.16..................................................16

TEX. CODE CRIM. PROC. art. 38.23..............................................24, 26

TEX. PENAL CODE § 1.07(a)(30).....................................................24

TEX. PENAL CODE § 49.04(a)......................................................11, 16

TEX. PENAL CODE § 49.09(b)(2) ..................................................11, 16

TEX. TRANSP. CODE § 724.012(b).............................................*passim*

TEX. TRANSP. CODE § 724.012(b)(3).................................................16

TEX. TRANSP. CODE § 524.012(b)(1) ................................................19

U.S. CONST. amend. IV ..........................................................*passim*

## RULES

TEX. R. APP. P. 66.3 ....................................................................15

TEX. R. APP. P. 9.4 .....................................................................28

viii

# IN THE COURT
# OF CRIMINAL APPEALS OF TEXAS

| | | |
|---|---|---|
| LAURA DENISE MOORE, APPELLANT | § § § | |
| V. | § § | PD-1228-15 |
| THE STATE OF TEXAS , APPELLEE | § § § | |

## STATE'S PETITION FOR DISCRETIONARY REVIEW

TO THE HONORABLE JUDGES OF
THE COURT OF CRIMINAL APPEALS:

Comes now the State of Texas, by and through her Tarrant County Criminal District Attorney, and respectfully urges this Court to grant discretionary review of this cause in accordance with the rules of appellate procedure.

## STATEMENT REGARDING ORAL ARGUMENT

While the reasonableness of statutory mandatory blood draws merits argument, this Court has already heard oral argument on the instant issues in other cases currently before the Court. Therefore, the State does not request oral argument in this case.

9

## STATEMENT OF THE CASE

A jury convicted Appellant of felony driving while intoxicated. TEX. PENAL CODE §§ 49.04(a), 49.09(b)(2).[1]  (CR1:6, 142,149-50; RR4:29; RR6:18-19).  Subsequently, the trial court sentenced Appellant to ten years' incarceration, probated for five years; the judge also assessed a $1500 fine.  (CR1:149-50; RR7:137-41).

## STATEMENT OF THE PROCEDURAL HISTORY OF THE CASE

The Eastland Court of Appeals reversed the trial court in an unpublished opinion authored by Chief Justice Willson. *Moore v. State*, No. 11-13-00347-CR, 2015 WL 5192175 (Tex. App.—Fort Worth Aug. 21, 2015).  Rehearing was not sought.  The State files this petition, due on October 21, 2015, following one extension.

## STATEMENT OF FACTS

In this felony driving while intoxicated prosecution, officers seized Appellant's blood pursuant to the mandatory blood draw provision contained in Texas' implied-consent law. TEX. TRANSP. CODE §724.012(b).

---

[1] Statutory references cited throughout refer to the current version unless noted.

At the trial court level, the judge denied Appellant's motion to suppress the blood evidence. (CR1:138-40; RR3:13-14). On appeal, Appellant's first point of error relied on the *McNeely* decision. *Missouri v. McNeely*, 569 U.S. ___, 133 S. Ct. 1552 (2013). Appellant also raised two additional jury instruction contentions; they remain unaddressed due to the appellate disposition of the *McNeely* claim. *Moore*, 2014 WL 5192175, at *1.

The Eastland Court of Appeals reversed on the blood draw issue; the appellate court rejected the State's various arguments regarding the propriety of the trial judge's suppression ruling. *Id.* at *1-5. The trial court had denied suppression, entering express findings that:

1) probable cause supported the DWI arrest;
2) the officer possessed reliable information revealing Appellant's two prior DWIs;
3) Appellant refused to provide a breath specimen;
4) Texas' implied consent framework existed for decades and had been enacted due to public policy concerns;
5) the instant officer relied on the blood draw statute instead of seeking a warrant; and
6) under these circumstances, the compelled sample was constitutionally reasonable.

(RR2:24-26,36,43; RR3:8-14). In addition to the ruling on the merits of the *McNeely* point, the interim appellate court rejected the State's argument regarding the inapplicability of the exclusionary rule in this case. *Moore*, 2014 WL 5192175, at *4-5.

11

## QUESTIONS PRESENTED FOR REVIEW

### FIRST QUESTION FOR REVIEW

**Does a warrantless, nonconsensual blood draw conducted pursuant to TEX. TRANSP. CODE § 724.012(b) violate the Fourth Amendment?**

### SECOND QUESTION FOR REVIEW

**Are Fourth Amendment warrant-preference exceptions the sole measure of Fourth Amendment reasonableness in warrantless scenarios?**

### THIRD QUESTION FOR REVIEW

**Do exclusionary rule principles mandate suppression of blood evidence seized via a warrantless, nonconsensual, valid-at-the-time mandatory blood draw?**

## ARGUMENT AND AUTHORITIES

This Court is in the midst of grappling with the issues presented herein. Whilst a November 2014 decision addressed the merits of the Fourth Amendment issue in one of the several *McNeely*-related cases then pending, what appeared decided remains in flux since the Court granted rehearing last February. *State v. Villarreal*, PD-0306-14, ___ S.W.3d ___, 2014 WL 6734178 (Tex. Crim. App. 2014) (reh'g granted, re-submitted Mar. 18, 2015). Additionally, the appellate milieu includes six other submitted *McNeely*-inspired cases. *Weems v. State*, 434 S.W.3d 655 (Tex. App.—San Antonio 2014, pet. granted) (submitted on arguments Nov. 19, 2014, PD-0635-14); *Reeder v. State*, 428 S.W.3d 930 (Tex. App.—Texarkana 2014, pet. granted) (submitted on arguments Jan. 14, 2015, PD-0601-14); *Smith v. State*, No. 13-11-00694-CR, ___ S.W.3d ___, 2014 WL 5901759 (Tex. App.—Corpus Christi 2014, pet. granted) (submitted Apr. 29, 2015, PD-1615-CR); *McGruder v. State*, No. 10-13-00109-CR, ___ S.W.3d ___, 2014 WL 3973089 (Tex. App.—Waco 2014, pet. granted) (submitted Apr. 15, 2015, PD-1263-14); *Holidy v. State*, No. 06-13-00261-CR, 2014 WL 1722171 (Tex. App.—Texarkana Apr. 30, 2014, pet. granted) (mem. op., not designated for publication) (submitted on arguments Jan.

14, 2015, PD-0622-14); *Cole v. State*, 454 S.W.3d 89 (Tex. App.—Texarkana 2014, pet. granted Apr. 22, 2015) (submitted on arguments Sep. 16, 2015, PD-0077-15).

The State's instant petition focuses on two aspects of any *McNeely-*related consequences: *the validity of a statutorily-compelled draw and the invalidity of the exclusionary rule's application*. *Villarreal* only resolved the merits of the mandatory-draw issue, not addressing the applicability of the exclusionary rule. *Villarreal*, 2014 WL 6734178. Nevertheless, the exclusionary rule issue is already before this Court. *See Cole*, 454 S.W.3d at 89 (fourth ground granted); *see also Weems*, 434 S.W.3d at 666 (applying exclusionary rule). In other words, this Court has already granted review on both issues presented herein.

Review should be granted in this case because it involves important questions of law that are have not yet been finally addressed by this Court, matters in conflict in the interim appellate courts, and a misapplication of a Supreme Court decision that has been interpreted as undermining the validity of the Texas implied-consent statute. TEX. R. APP. P. 66.3(a)-(d),(f).

14

## I.    Valid, compelled statutory blood draw

The State's appellate stance is in lockstep with that of prosecutors from other counties across the State who have already had cases granted for review on a *McNeely*-related issue.  Hence, the State respectfully asks this Court to dispose of the instant case in a manner consistent with the petitions in *Villarreal*, *Weems*, *Reeder*, *Smith*, *McGruder*, *Holidy*, and *Cole*.  Here, the officer reasonably relied on an existing, ubiquitous narrowly-focused, reasonable statute to obtain a compelled blood draw.  The seizure occurred because the officer possessed probable cause that Appellant's impaired conduct constituted felony DWI.  TEX. PENAL CODE §§ 49.04(a), 49.09(b)(2); TEX. TRANSP. CODE § 724.012(b)(3).

In addition, the State differs with *Villarreal's* original-submission decision and further asserts that several important arguments should be considered on the merits.

### A.    Codification of Fourth Amendment principles

*Villarreal* failed to consider that the implied-consent statute codified Fourth Amendment principles.  For instance, this Court has previously recognized a statutory codification of the exigency exception.  *See Miles v. State*, 241 S.W.3d 28, 39–40 n.54 (Tex. Crim. App. 2007) (*citing* TEX. CODE CRIM. PROC. art. 18.16).  *McNeely* recognized that every case involving the

dissipation of alcohol included *some* exigency. *McNeely*, 133 S. Ct. at 1561, 1568. This ever-present exigency must be considered when assaying the reasonableness of statutory draws.

Combine this static alcohol-evaporation-exigency consideration with the Legislature's clear codification of the gravity-of-the-offense exigency. The implied-consent statute extinguished a defendant's right to refuse where an officer possesses probable cause to believe that certain enumerated, egregious circumstances exist. TEX. TRANSP. CODE § 724.012(b). Defendants only lose their refusal right under carefully circumscribed scenarios involving felonious intoxication-related offenses and/or resultant injuries necessitating hospitalization. *Id.* The statute only applies to the most serious categories of DWI offenders.

This statutory limitation amounts to a codification of an additional recognized exigency unrelated to blood-alcohol dissipation. *Welsh v. Wisconsin* held that the Fourth Amendment authorizes common-sense consideration of the underlying offense's gravity when weighing the existence of an exigency. *Welsh v. Wisconsin*, 466 U.S. 740, 751–52 (1984) (exigency calculations include consideration of a crime's severity). Consideration of a crime's gravity is the essence of reasonableness

16

because the State's interest is greater in a more serious case. *Cf*. TEX. CODE CRIM. PROC. art. 14.04 (authorizing warrantless arrests for felonies where an officer did not observe the offense).

Of course, it almost goes without saying that Texas' implied-consent legislation codified Fourth Amendment probable cause requirements. U.S. CONST. amend. IV. Predicate elements of the implied consent statute codify this well-known quantum-of-evidence as a requirement for a compelled search. TEX. TRANSP. CODE § 724.012(b). The probable cause requirement—in tandem with the codified gravity-of-the-crime and dissipation-of-alcohol exigencies—creates a neutral, non-arbitrary framework authorizing a narrowly-defined seizure from an already-in-custody arrestee. These refinements in the implied-consent statute's structure embrace the essence of Fourth Amendment reasonableness.

## B. Special-needs framework adds to the reasonableness calculation

The now-withdrawn *Villarreal* decision rejected application of the Supreme Court's special needs doctrine to the mandatory blood draw framework. *Villarreal*, 2014 WL 6734178, at \*14–15; *see Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 619 (1989). However, the Court did not consider that blood drawn pursuant to Chapter 724's mandate

also implicates administrative license revocation [ALR] procedures, a separate regulatory process that focuses on protecting the traveling public by removing offenders from the road. *See* T EX. T RANSP. C ODE § 524.012(b)(1) (mandating license suspension based upon BAC).

"The primary purpose of the administrative license suspension statute is not to deter the licensee or to seek retribution, but to protect the public from the carnage on the public roads of Texas caused by drunk drivers." *Tharp v. State*, 935 S.W.2d 157, 159 (Tex. Crim. App. 1996). Such regulation focuses on the government's strong interest in removing intoxicated drivers from the road, just as railroad regulation in *Skinner* sought to increase railway safety by detecting intoxicated employees. *Compare Skinner*, 489 U.S. at 620–21 with *Tharp*, 935 S.W.2d at 159.

Special needs' principles recognize the statute's provision of a neutral, detached vehicle for protecting citizens from impaired drivers and defendants from unfettered discretion. The special-needs exception constitutes another factor to consider in a non-dualistic analysis that renders Texas' compelled-draw framework reasonable.

**C. Erroneous consideration of the "Less Intrusive Means" test**

The original *Villarreal* decision considered the ready availability of warrants when rejecting the validity of Texas' mandatory draw statute. *Villarreal*, 2014 WL 6734178, at *18 (finding no compelling need to uphold warrantless, nonconsensual blood searches where warrants are "often readily available"). However, factors such as electronic warrants and the availability of a magistrate shift the focus away from an officer's conduct and, instead, weigh considerations of alternative means. *But see McNeely*, 133 S. Ct. at 1560–64 (Part IIB's alternative means analysis applied when determining whether *per se* exigency existed).

The Supreme Court resoundingly rejected applying less-intrusive-alternative-practices arguments to Fourth Amendment cases not resolved under the exigency exception. *Vernonia School Dist. 47J v. Acton*, 515 U.S. 646, 663–64 n.3 (1995) (upholding warrantless, random urine screening of athletes after considering diminished privacy, unobtrusiveness, and severity of need, spurning arguments relying on less intrusive alternatives); *Skinner*, 489 U.S. at 629 n.9 (upholding random, suspicionless drug screening of railway employees under special needs exception and discarding less-drastic-and-equally-effective-means

19

arguments).  One footnote in *Skinner* flatly debunks the propriety of considering less-drastic alternatives in scenarios that include warrantless and even suspicionless seizures for toxicological testing, similar to Appellant's facts.  *Id.*

The State maintains that less-restrictive-alternatives logically apply when a seizure's validity rests solely on the temporal factors presenting an exigency; less-drastic, *post-hoc* what-ifs do not apply, however, to reasonableness calculations factoring in other warrantless exceptions. *Villarreal's* analysis mistakenly applied this eschewed construct.

## II.    Implied-consent draws are reasonable

Reasonableness has always been the linchpin of the Fourth Amendment, venerated in the provision's plain language.  U.S. CONST. amend IV; *Hulit v. State*, 982 S.W.2d 431, 435–36, 438 (Tex. Crim. App. 1998).  Discernment of what is "reasonable" requires courts to consider the balance between an individual's privacy and legitimate governmental interests, especially when public safety is of utmost concern.  *See Maryland v. King*, 569 U.S. ___, 133 S. Ct. 1958, 1979 (2013); *Michigan Dept. of State Police v. Sitz*, 496 U.S. 444, 455 (1990); *Segundo v. State*, 270 S.W.3d 79 (Tex. Crim. App. 2008), *cert. denied*, 558 U.S. 828 (2009).

20

*Villarreal* viewed the choice between applying a Fourth Amendment exception and consideration of a reasonableness balancing approach as mutually exclusive analytical constructs. The State respectfully believes that this black-white consideration of these two concepts is mistaken, especially in light of the fact that this Court has relied upon the balancing approach to assay reasonableness on similar issues. *See Segundo*, 270 S.W.3d at 96–99; *McGee v. State*, 105 S.W.3d 609 (Tex. Crim. App. 2003); *Hulit*, 982 S.W.2d at 434 n.1, 436.

Again, the statute is reasonable. Years ago, the Supreme Court recognized that a framework requiring a driver's consent was anything but nonsensical. The *Breithaupt* court pointed to then recently adopted implied-consent provisions and wrote:

> It might be a fair assumption that a driver on the highways in obedience to a policy of the State, would consent to have a blood test made as part of a sensible and civilized system protecting himself as well as other citizens not only from the hazards of the road due to drunken driving, but also from some use of dubious lay testimony.

*Breithaupt v. Abram*, 352 U.S. 432, 435 n.2 (1957). The State contends that compelled draws under implied-consent provisions are inherently reasonable when weighing the needs of all involved. Indeed, Fourth Amendment reasonableness underpins the statute. The well-known

21

exceptions—as argued in the myriad cases already before this Court—considered individually and in concert with each other, alongside a balancing of the competing interests, all support the continued viability of Texas' implied-consent framework.

## III. Exclusionary rule inapplicable and not invoked

Statutory mandatory blood-draws are reasonable. *But see Villarreal*, 2014 WL 6734178 (opinion on original submission; under re-submission). When the ink dries on *Villarreal* and future *McNeely*-related decisions and if those cases are adverse to the State on the merits, the rules requiring evidence exclusion should not apply to mandatory blood-draw scenarios that occurred prior to the Supreme Court's April 2013 pronouncement.

Federally, the good-faith exception to the Fourth Amendment's exclusionary rule applies when law enforcement, at the time of the search, acted with objectively reasonable reliance on (1) a statute, later declared unconstitutional, or (2) binding judicial precedent, subsequently overruled. *Illinois v. Krull*, 480 U.S. 342, 349–57 (1987) (statutes); *Davis v. United States*, ___ U.S. ___, 131 S. Ct. 2419, 2428–34 (2011) (caselaw).

Nor does the Texas exclusionary rule apply. First, the officer's conduct at the time did not trigger exclusions under subsection (a).

Second, the statutory good faith exception set out in article 38.23(b) is inapplicable in this instance and has been previously misinterpreted. TEX. CODE CRIM. APP. § 38.23(b). Overall, invocation of exclusionary rule principles should hinge on the intent of the statute as a whole, including its history.

As for subsection (a)'s language, a violation at the time of the seizure is the exclusion trigger. When Appellant's blood was drawn, no one credibly questioned the validity of the officer's statutory authority. At the time of the seizure, the officer followed then-existing law. *See* TEX. CODE CRIM. PROC. art. 38.23(a); *see also* TEX. PENAL CODE § 1.07(a)(30) (defining "law" as meaning the state and federal constitution and statutes, in addition to the written opinions of a court of record); *see also Davis*, 131 S. Ct. at 2427–28 ("obtained" applies to unlawfulness at the time of the seizure; exclusion not triggered in an absence of police culpability). Simply put, the instant circumstances do not invoke exclusion.

Additionally, the State avers that Texas jurisprudence mistakenly limits exclusionary rule application; legislators never intended that article 38.23(b)'s warrant provision be the sole exclusionary exception. Instead, Texans were to be afforded the same exclusionary protection coextensive

23

with federal law.  *See State v. Daugherty*, 931 S.W.2d 268, 275 & n.1 (Tex. Crim. App. 1996) (McCormick, P.J., concurring and dissenting, joined by White and Keller, JJ.) (citations omitted); *Garcia v. State*, 829 S.W.2d 796, 803 n.1 (Tex. Crim. App. 1992) (Miller, J., concurring, joined by Campbell, J.).  Finally, rejecting exclusion where an officer acted with obeisance to existing rules provides incentive for officers to follow the law, fulfilling the overlying purpose of the exclusionary rule.

The Supreme Court mentioned, in *dictum*, the application of the exclusionary rule versus Fourth Amendment violations in a non-blood-draw scenario decided recently.  In *Heien*, the Court weighed the validity of an investigatory stop where the officer misunderstood the traffic code provision he relied on to support the stop.  *See Heien v. North Carolina*, ___ U.S. ___, 135 S. Ct. 530, 538–39 (2014).  The Supreme Court considered the reasonableness of the officer's mistake that lead to the stop and arrest when considering remedies.  In so doing, the Court pointed out the myriad decisions finding exclusionary-rule invocation inappropriate where the officer's conduct—valid at the time—was later declared unconstitutional. *Id.*  With only one justice dissenting, the Supreme Court's decision pondered the exclusionary rule's limits that had been briefly considered in

24

*Michigan v. DeFillippo. Heien*, 135 S. Ct at 538–39; *see generally Michigan v. DeFillippo*, 443 U.S. 31, 3–9 (1979) (suggesting that exclusion might have been appropriate had the provision been "grossly and flagrantly unconstitutional").

Although the *Heien* discussion is merely *dicta*, it reiterates the importance of focusing on the fact that the instant officer's conduct fully complied with mandatory, settled law at the time of Appellant's arrest. *Heien*, 135 S. Ct. at 538–39. *McNeely* and subsequent caselaw questioning implied-consent blood draws came later. Since, no violation occurred at the time of the Appellant's 2011 blood draw, Texas' exclusionary provision does not apply. TEX. CODE CRIM. PROC. art. 38.23(a). And since any legal error by the officer was reasonable, Fourth Amendment cases do not mandate the remedy of exclusion. *See Heien*, 135 S. Ct. at 539.

## **CONCLUSION AND PRAYER**

Review should be granted and the decision of the Court of Appeals should be reversed. The cause should be remanded to the Court of Appeals to address Appellant's remaining jury-charge-related issues. Ultimately, Appellant's felony DWI with a child passenger conviction should be upheld.

Respectfully submitted,

SHAREN WILSON
Criminal District Attorney
Tarrant County, Texas

DEBRA WINDSOR, Assistant
Criminal District Attorney
Chief, Post-Conviction

/s/ Tanya S. Dohoney
TANYA S. DOHONEY
Assistant Criminal District Attorney
Tim Curry Criminal Justice Center
401 W. Belknap
Fort Worth, Texas 76196-0201
(817) 884-1687
FAX (817) 884-1672
State Bar No. 02760900
ccaappellatealerts@tarrantcountytx.gov

26

## CERTIFICATE OF COMPLIANCE

This document complies with the typeface requirements of TEX. R. APP. P. 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. This document also complies with the word-count limitations of TEX. R. APP. P. 9.4 (i) because it contains less than 3900 words, excluding any parts exempted by TEX. R. APP. P. 9.4(i)(1), as computed by Microsoft Word, the computer software used to prepare the document.

/s/ Tanya S. Dohoney
TANYA S. DOHONEY

## CERTIFICATE OF SERVICE

A true copy of the State's brief has been e-served to opposing counsel, the Hon. Richard Henderson, 1999 Throckmorton Street, Suite 540, Fort worth, Texas 76102 at richard@rahenderson.com, on the 21st day of October, 2014.

/s/ Tanya S. Dohoney
TANYA S. DOHONEY

U:\BRIEFS\PDRs & Merit Briefs\101215 moore mcneely pdr.docx